IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUSTIN LOVAN, and<br>ANGIE LOVAN<br><br>      Plaintiff,<br><br>vs.<br><br>GENERAL MOTORS, LLC<br>Serve Registered Agent:<br>    CSC of St. Louis County, Inc.<br>    130 South Bemiston Avenue<br>    Suite 700<br>    Clayton, MO 63105<br><br>      Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' COMPLAINT

COME NOW Plaintiffs Justin Lovan and Angie Lovan, by and through their undersigned counsel, and for their Complaint and causes of action against Defendant General Motors, LLC, state and allege as follows:

1. Plaintiff Justin Lovan is a citizen and resident of the State of Missouri.

2. Plaintiff Angie Lovan is a citizen and resident of the State of Missouri.

3. Defendant General Motors, LLC (hereinafter "GM") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Michigan.

4. Defendant GM is registered to do business in the State of Missouri, maintains a registered agent in the State of Missouri, and may be served with process through its registered agent at the above-listed Missouri address.

1

5. Pursuant to 28 U.S.C. § 1332, this Court has subject-matter jurisdiction over this civil action, as the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties.

6. Defendant GM is and was in the business of, *inter alia*, designing, engineering, manufacturing, distributing, and selling vehicles under various brand names, including Chevrolet and GMC.

7. Defendant GM is subject to the general jurisdiction of this Court, in that it is a corporation conducting substantial business within the State of Missouri by maintaining continuous and systematic contacts with the State of Missouri, including but not limited to:

   a. GM maintains at least one place of business in Missouri, the Wentzville Assembly Plant located in Wentzville, Missouri;

   b. The Wentzville Assembly Plant has been in operation since 1983, and is located on an approximately 540 acre site in Wentzville, Missouri, and the plant encompasses approximately 5,100,000 square feet;

   c. The Wentzville Assembly Plant employs approximately 4,320 workers;

   d. The Wentzville Assembly Plant currently produces the Chevrolet Colorado, GMC Canyon, Chevrolet Express 2500/3500, GMC Savana 2500/3500, and previously produced the Buick Electra, Buick LeSabre, Buick Park Avenue, Pontiac Bonneville, Pontiac Parisienne, Oldsmobile 88, Oldsmobile 98, Oldsmobile Touring Sedan, Chevrolet Express 1500 and GMC Savana 1500;

   e. GM has produced millions of vehicles at the Wentzville Assembly Plant, which has been in operation for more than 30 years;

    f.   GM transports new Chevrolet and GMC vehicles on Missouri highways and railways for distribution throughout the State of Missouri and the United States; and/or

    g.   GM transports used Chevrolet and GMC vehicles on Missouri highways and railways for distribution throughout the State of Missouri and the United States.

8. Defendant GM's business contacts with the State of Missouri are so continuous and systematic as to render it essentially at home in Missouri, and as such, this Court may exercise general jurisdiction over Defendant GM.

9. Defendant GM has purposely availed itself of the privilege of conducting business in the State of Missouri and has thereby consented to the jurisdiction of this Court. Defendant GM's conduct and connection with the State of Missouri are such that it could reasonably anticipate being hauled into a court in the State of Missouri.

10. Defendant GM is subject to the specific jurisdiction of this Court in that a vehicle designed, manufactured, and distributed by Defendant GM caused injury to Plaintiff Justin Lovan within the confines of the State of Missouri and this District.

11. Defendant GM, through the acts of its employees or agents, has submitted itself to the jurisdiction of this Court pursuant to the State of Missouri's long-arm statute, R.S.Mo. § 506.500, in that it transacted business in this state, made a contract in this state, and/or committed a tortious act in this state.

12. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and Local Rule 3-2.07, in that a substantial part of the events giving rise to this claim occurred within this judicial district, in that Plaintiff Justin Lovan suffered burn injuries as a result of the performance of and
3

defects in the seat heater of a GM vehicle within the confines of the State of Missouri and this District.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

13. Plaintiffs adopt and incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

14. On or about November 26, 2018, Plaintiff Justin Lovan was operating his 2008 Chevrolet Silverado, VIN 1GCJC33638F214180 (hereinafter "Subject Silverado"), on a trip from his home in Gainesville, Missouri to Bossier City, Louisiana to deliver a trailer, from which he returned to his home in Gainesville, Missouri.

15. During said trip, Plaintiff Justin Lovan's seat heater was inadvertently turned on.

16. Plaintiff Justin Lovan was rendered a paraplegic in his early twenties as a result of an automobile accident, and as a result, he has no feeling below the waist.

17. During said trip, the seat heater for the driver seat of the Subject Silverado generated dangerously high temperatures and heat that Plaintiff Justin Lovan could not sense because of the lack of feeling in his lower extremities.

18. Following his arrival at home in Gainesville, Missouri, Plaintiff Justin Lovan discovered that he had sustained significant burn injuries as a result of the performance of and defects in the seat heater for the driver seat of the Subject Silverado.

19. Specifically, Plaintiff Justin Lovan experienced second and third degree burns to his thighs, buttocks, the underside of his scrotum, and his lower left hip.

20. As a result of the burn injuries, Plaintiff Justin Lovan received wound care including weekly visits to a wound care specialist, daily home care and therapies, re-opening of wounds, along with immense physical pain and emotional suffering.

4

# COUNT I – STRICT LIABILITY

21. Plaintiffs adopt and incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

22. At all times relevant hereto, Defendant GM was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing, and selling the Chevrolet Silverado, amongst other vehicles.

23. Prior to the subject incident, Defendant GM designed, manufactured, assembled, inspected, tested, distributed, placed into the stream of commerce, and sold the Subject Silverado in the normal course of its business for use by the general public.

24. At the time the Subject Silverado left the control of Defendant GM, the Subject Silverado was defective and unreasonably dangerous when put to reasonably anticipated use.

25. The Subject Silverado was defective and unreasonably dangerous due to the performance of and failings in the seat heater for its driver seat, *including, but not limited to*, the following:

   a. The seat heater and its associated component parts generated dangerously high temperatures and heat which could and did produce serious burn injuries to occupants exposed to it;

   b. The seat heater and its associated components lacked adequate safeguards to prevent the release of dangerously high temperatures and heat;

   c. The seat heater and its associated components lacked an automatic shut off switch or other device which would have served to stop its performance prior to emitting dangerously high temperatures and heat;

d. The seat heater and its associated components failed to safely regulate the temperatures and heat emitted in violation of GM's own design and performance specifications;

e. The seat heater and its associated components failed to safely regulate the temperatures and heat emitted in violation of GM's knowledge of industry and medically recognized risks;

f. The seat heaters and its associated components had not been adequately tested and/or inspected before the Silverado was distributed and sold;

g. The Silverado lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition of the seat heater and its associated component parts, or the risk of injury from such hazardous condition;

h. Failure to make use of feasible alternative design features available for the protection of occupants from dangerously high temperatures and heat; and/or

i. In other respects, unknown to Plaintiffs at this time, but which may become known prior to trial.

26. The Subject Silverado was expected to and did reach the hands of the consumer, including Plaintiffs, without substantial change or modification, and was in substantially the same condition on the day of the subject incident as it was when it left the possession and control of Defendant GM.

27. The Subject Silverado was used by Plaintiffs in a reasonably anticipated manner.

28. Defendant GM knew or should have known that the Subject Silverado would be used without inspection for defect and represented that the Silverado could be safely used for the ordinary purposes for which it was intended.

6

29. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Silverado, Plaintiff Justin Lovan sustained severe burn injuries, which led to weekly visits to a wound care specialist, daily home care and therapies, re-opening of the wounds, along with immense physical pain and emotional suffering.

30. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Silverado, Plaintiff Justin Lovan has suffered the following damages: past and future medical and rehabilitation expenses; loss of ability to perform services; conscious pain, suffering, and psychological anguish; loss of enjoyment of life; lost wages; impairment of earning capacity; and impairment of general health, strength and vitality.

31. The above conduct of Defendant GM showed complete indifference to or conscious disregard for the safety of others, including Plaintiffs, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff Justin Lovan prays that this Court enter judgment against Defendant GM for a reasonable sum of damages as will fairly and justly compensate Plaintiff, for punitive damages in such sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT II – NEGLIGENCE

32. Plaintiffs adopt and incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

33. At all times relevant hereto, Defendant GM was actively engaged in the business of designing, manufacturing, marketing, warranting, distributing, and selling Silverado vehicles.

7

Case 6:20-cv-03058-MDH   Document 1   Filed 03/02/20   Page 7 of 11

34. As a motor vehicle designer, manufacturer, distributer, and seller, Defendant GM knew that users of their vehicles could be injured by the performance of its vehicle systems, and the extent of their injuries would frequently be determined by the design and construction of such systems, including the seat heater for the driver seat of the Subject Silverado in this case.

35. Defendant GM had a duty to exercise reasonable care in the design, testing, manufacture, and sale of the Subject Silverado.

36. Defendant GM breached its duty to exercise reasonable care in the design, testing, manufacture, and sale of the Subject Silverado in multiple respects, *including, but not limited to*:

   a. The seat heater and its associated component parts generated dangerously high temperatures and heat which could and did produce serious burn injuries to occupants exposed to it;

   b. The seat heater and its associated components lacked adequate safeguards to prevent the release of dangerously high temperatures and heat;

   c. The seat heater and its associated components lacked an automatic shut off switch or other device which would have served to stop its performance prior to emitting dangerously high temperatures and heat;

   d. The seat heater and its associated components failed to safely regulate the temperatures and heat emitted in violation of GM's own design and performance specifications;

   e. The seat heater and its associated components failed to safely regulate the temperatures and heat emitted in violation of GM's knowledge of industry and medically recognized risks;

     f.   The seat heaters and its associated components had not been adequately tested and/or inspected before the Silverado was distributed and sold;

     g.   The Silverado lacked adequate warnings and/or other proper notice to alert users regarding the hazardous condition of the seat heater and its associated component parts, or the risk of injury from such hazardous condition;

     h.   Failure to make use of feasible alternative design features available for the protection of occupants from dangerously high temperatures and heat; and/or

     i.   In other respects, unknown to Plaintiff at this time, but which may become known prior to trial.

37. As a direct and proximate result of the negligent acts and/or omissions of Defendant GM, Plaintiff Justin Lovan sustained severe burn injuries, which led to weekly visits to a wound care specialist, daily home care, and therapies, re-opening of the wounds, along with immense physical pain and emotional suffering..

38. As a direct and proximate result of the negligent acts and/or omissions of Defendant GM, Plaintiff Justin Lovan has suffered the following damages: past and future medical and rehabilitation expenses; loss of ability to perform services; conscious pain, suffering, and psychological anguish; loss of enjoyment of life; lost wages; impairment of earning capacity; and impairment of general health, strength and vitality.

39. The above conduct of Defendant GM showed complete indifference to or conscious disregard for the safety of others, including Plaintiffs, justifying the imposition of punitive damages in an amount sufficient to punish Defendant and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff Justin Lovan prays that this Court enter judgment against

9

Case 6:20-cv-03058-MDH   Document 1   Filed 03/02/20   Page 9 of 11

Defendant GM for a reasonable sum of damages as will fairly and justly compensate Plaintiff, for punitive damages in such sum as will serve to punish Defendant and deter Defendant and others from engaging in like conduct, for his costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT III - LOSS OF CONSORTIUM

40. Plaintiffs adopt and incorporate by reference, as if fully set forth herein, the preceding paragraphs of this Complaint.

41. Plaintiff Justin Lovan and Plaintiff Angie Lovan are and were, at all relevant times, husband and wife.

42. As a direct and proximate result of the aforementioned injuries sustained by Plaintiff Justin Lovan, and as a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Silverado and the negligent acts and/or omissions of Defendant GM, Plaintiff Angie Lovan has suffered the loss and impingement of her husband's services, society, companionship, and marriage relationship.

WHEREFORE, Plaintiff Angie Lovan prays that this Court enter judgment against Defendant for a reasonable sum of damages as will fairly and justly compensate Plaintiff, for her costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all allegations, claims, and causes of action asserted herein.

Respectfully submitted,

**LANGDON & EMISON**

/s/ David A. Brose
_____
J. Kent Emison, WDMO# 29721
David A. Brose, WDMO# 56244
911 Main Street
P. O. Box 220
Lexington, Missouri 64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
kent@lelaw.com
david@lelaw.com
**ATTORNEYS FOR PLAINTIFFS**